### REGIONAL FEDERAL SAVINGS BANK, Plaintiff,

v.

**Harold MARGOLIS, Stephen M.J. Hoffman, Isadore Goldbaum, Louis Goldfaden, and Eckles Road Investments, Defendants.**

Civ. A. No. 92–75462.

United States District Court, E.D. Michigan, S.D.

Oct. 14, 1993.

Arnold M. Gordon, Gordon, Cutler & Hoffman, Southfield, MI, for Louis Goldfaden, Eckles Road Investments.

Harold D. Pope III, Lewis White & Clay, Detroit, MI, for Regional Federal Sav. Bank.

Arthur J. Cole, Southfield, MI, Mark E. Shreve, Garan, Lucow, Miller, Seward, Cooper & Becker, PC, Troy, MI, for Isadore Goldbaum.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

Plaintiff Regional Federal Savings Bank ("Regional") claims that defendants Harold Margolis, Stephen Hoffman, Isadore Goldbaum, and Louis Goldfaden are personally liable on the entire amount still outstanding on a loan made to defendant Eckles Road Investments ("ERI") that is now in default. Before the court is the defendants' motion for summary judgment. For the reasons discussed below, the court will grant defendants' motion.

### I. Background Facts

In April of 1975, the individual defendants filed an application for a loan with the American Savings Association in the amount of $420,000 for the purchase of some commercial property. The defendants filed another application on July 21, 1975. Both applications stated that the loan would be secured by "personal guarantees" executed by "all principals and their respective wives on the top Thirty Percent (30%) of the loan."

The loan application was processed by American Savings and on July 31, 1975, the commercial loan officers recommended approval of the application to the commercial loan committee subject to certain stated terms. The recommendation stated that "[t]he proposed borrowers shall be personally liable for the first Thirty Percent (30%) of the loan." On August 11, 1975, American Savings sent a five-page commitment letter to the four individual partners setting forth the terms it was offering. The twelfth condition of the letter reads as follows:

12. Repayment of the top Thirty Percent (30%) of the loan shall be jointly and severally, personally guaranteed by Isadore Goldbaum and his wife; Harold Margolis and his wife, Stephen M. J. Hoffman and his wife; Louis Goldfaden and his wife; and all other principals and their respective wives.

On September 23, 1975, defendant ERI filed a certificate of co-partnership with the Wayne County Clerk. The partners of ERI were listed as defendants Goldbaum, Margolis, Hoffman, and Goldfaden.

On October 1, 1975, defendant Goldbaum signed a mortgage note on behalf of ERI. The note makes no mention of a limitation of the personal liability of the partners. On the same day, the four partners and their wives signed a guaranty of the mortgage note. The guaranty provides as follows:

In the event of default by Borrower [ERI] in the payment of any sums due to Lender [American Savings], . . . Guarantors agree to pay or perform the same on demand; provided, however, that anything herein contained to the contrary notwithstanding, Isadore Goldbaum and Adrienne Goldbaum, his wife, Harold Margolis and Rachel Margolis, his wife, Stephen M. J. Hoffman and Barbara Hoffman, his wife and Louis Goldfaden and Sarah Goldfaden, his wife shall be liable only to the extent of first One Hundred Twenty Six Thousand and No/100 Dollars ($126,000.00) becoming due hereunder.

Pursuant to the note, the parties also executed a security agreement and a mortgage. Subsequently, plaintiff Regional, through the Resolution Trust Company and a predeces-

sor to Regional, Union Federal Bank, acquired ERI's note to American Savings. Plaintiff alleges that ERI defaulted on the loan on October 1, 1990, and now owes in excess of $290,000 plus accrued interest.

On September 10, 1992, plaintiff filed its complaint in this court. Plaintiff claims that based on the express terms of the note, the partners are personally liable for the outstanding balance of the debt in excess of any assets held by ERI. According to plaintiff, the only asset held by ERI is the property securing the mortgage note. Plaintiff alleges that the property is worthless because of environmental contamination.

All of the defendants filed counter-claims against Regional, alleging mutual mistake in the formation of the contract. Defendants ask the court for reformation of the contract as originally intended by the parties. Defendants Hoffman, Goldfaden, Margolis, and ERI also filed a cross claim against defendant Goldbaum alleging negligence and malpractice. These defendants claim that Goldbaum negligently negotiated the note for the loan, mistakenly leaving out the agreed limitation of liability clause.

Defendant Goldbaum filed a motion for summary judgment on Regional's claim on July 14, 1993. The other three individual defendants and ERI have since joined in Goldbaum's motion. Defendants claim that they are no longer personally liable for any of ERI's remaining liability on the mortgage note. The partners argue that they were only personally liable for the first thirty percent of the loan, or $126,000. Since at least that portion of the loan has already been paid off, defendants claim that Regional can only recover from the assets held by ERI.

## II. Standard of Review

■ Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984) (citation omitted) (quoting Black's Law Dictionary 881 (6th ed.1979)). The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.,* 749 F.2d 1205, 1210–11 (6th Cir.1984).

■ The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.,* 801 F.2d 859, 861 (6th Cir.1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg,* 801 F.2d at 861.

■ To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted). *See Catrett,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed.R.Civ.P. 50(a). *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511 Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd*, 929 F.2d 701 (6th Cir.1991). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block*, 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings and affidavits. *Id.*

### III. Analysis

■ The issue before the court is whether the defendants are personally liable on the remaining indebtedness of the mortgage note. The court must examine the language of the contract in order to determine the liability of the partners. If the court finds that the language of the contract is plain and unambiguous, then the court must implement the clear terms of the agreement. *Metropolitan Life Ins. Co. v. Foote*, 95 Mich.App. 399, 404, 290 N.W.2d 158 (1980). The threshold question of whether the contract is unambiguous is a question of law for the court to determine. *Steinmetz Electrical Contractors Ass'n v. Local 58, International Brotherhood of Electrical Workers*, 517 F.Supp. 428, 432 (E.D.Mich.1981).

In this case, defendants allege that the language of the contract is unambiguous in limiting the personal liability of the partners to the first thirty percent of the loan. In the alternative, however, defendants argue that if the court finds that the terms of the contract are ambiguous, then the court must examine parol evidence to determine the true intent of the parties to the original contract. Plaintiff claims that because the mortgage note contains no limitation of liability, the individual members of the partnership are fully liable for all remaining indebtedness.

■ Even where the terms of a contract appear to be unambiguous, the court may examine extrinsic evidence that demonstrates a latent ambiguity. *Goodwin, Inc. v. Orson E. Coe Pontiac, Inc.*, 392 Mich. 195, 205–206, 220 N.W.2d 664 (1974); *see Remes v. Holland*, 147 Mich.App. 550, 555, 382 N.W.2d 819 (1985). On its face, the note appears to hold the partnership liable for the entire amount. Since each partner is liable jointly and severally for the debts of the partnership, it would appear that the defendants are liable for the entire note. Defendants claim, however, that once the court examines the parol evidence, it will find that, in fact, the note is ambiguous.

■ In order to prove their claim, defendants present several different extrinsic authorities. The extrinsic evidence consists of two types, documents relating to the negotiation of the loan and the affidavits of employees of American Savings. In terms of documents, defendants point to the two loan applications, the commercial loan committee recommendation, the letter of commitment by American Savings to ERI, and the loan guaranty executed contemporaneously with the note. In each case, the personal liability on the loan of the individual defendants was limited to the first thirty percent. Similarly, defendants present five uncontradicted affidavits from American Savings personnel who were involved in the negotiation, approval, and execution of the note.[1] All of the affidavits support defendants' position that the parties to the original note intended that the members of the partnership would only be personally liable on the first thirty percent of

---

1. Defendants have presented statements by the following American Savings personnel: (1) Richard Seaton, assistant vice president and commercial loan officer, signed the loan commitment letter; (2) Bernard Golsky, in charge of the loan closing department, drafted the mortgage; (3) George Zeltzer, president of American Savings, approved the loan to ERI; (4) Gerald Hoskins, senior vice-president and chief administrative officer, approved the loan to ERI; (5) Wallace Kinzer, attorney for American Savings at the time of the loan, reviewed and prepared the loan documents. It is clear from their affidavits, that all of these individuals agree that the parties to the loan intended to limit the liability of the individual partners to the first thirty percent of the loan.

the indebtedness.[2] Even given the nature of partnership liability, the parties to the contract agree that the liability of the individual partners was intended to be so limited.

Defendants' position is further bolstered by the fact that each of the partners signed the guaranty. If plaintiff's interpretation of the contract were true, there would be no reason for the partners to sign the guaranty. As members of the partnership, the defendants would already be liable for the full amount of the note, even without the guaranty. Thus, the fact that the partners executed a guaranty indicates that thirty percent of the loan was the intended extent of their liability. Otherwise, the partners' execution of the guaranty would have been superfluous.[3] The clear implication is that the guaranty reflected the true extent of the total personal liability on the note.

After examining all of the extrinsic evidence presented by defendants, the court finds that the terms of the contract are ambiguous. Furthermore, based on the parol evidence, the court finds that it was the clear intent of the parties to the loan that the members of the partnership would only be personally liable for the first thirty percent, or $126,000, of the note. As plaintiff agrees that at least the first thirty percent of the loan has already been paid, the individual defendants cannot be held liable for the remainder of the note. Plaintiff will have to recover the outstanding portion of the loan from the assets still held by defendant ERI, including the property securing the mortgage. Defendant ERI's motion for summary judgment will be granted to the extent that the personal assets of its partners cannot be reached by plaintiff to satisfy the partnership's remaining indebtedness.

### ORDER

Therefore, it is hereby **ORDERED** that defendants Goldbaum, Hoffman, Margolis,

and Goldfaden's motion for summary judgment is **GRANTED**. ERI's motion for summary judgment is also **GRANTED** without limiting, however, the plaintiff's right to recover against partnership assets.

**SO ORDERED.**

---

**2.** Plaintiff does present a supplement to Seaton's affidavit. In the supplement, Seaton declares that all of the documents were to be "read together for all normal economic risks," but that "waste" would not limit the guarantees. In its brief, however, plaintiff does not argue waste, but instead contends that the express terms of the note do not limit the personal liability of the partners.

**3.** Obviously, the fact that the guaranty was also signed by the wives added additional security to the note. Just as obviously, however, the wives could have executed the guaranty without the signatures of their husbands.