[Civ. No. 7891. First Appellate District, Division One.—December 24, 1932.]

ROSE SCHNERR, Respondent, v. JOSEPH J. SCHNERR, Appellant.

Joseph A. Brown for Appellant.

Jesse H. Steinhart and John J. Goldberg for Respondent.

THE COURT.—As the result of contempt proceedings instituted by plaintiff some four years after the entry of the final decree of divorce in the above action, the trial court made an order relating to the payment of alimony; and defendant has appealed from said order.

The divorce action was instituted in October, 1924, upon the ground of extreme cruelty. There were no children, and no claim was made in the complaint either by allegation or prayer for alimony, temporary or permanent. With respect to property rights it was alleged "that the property rights of plaintiff and defendant have heretofore been settled by written agreement, and there is now no community property of said marriage of plaintiff and defendant". The relief sought was a divorce, that plaintiff be permitted to resume her maiden name and general relief. The answer consisted of a general denial. An interlocutory decree was granted November 5, 1924, and on November 6, 1925, the final decree was entered. Both decrees were silent upon the subject of alimony, but with reference to property rights each contained the following provision: "It is further ordered, adjudged and decreed, and this court does hereby order, adjudge and decree that the agreement between the parties hereto made and entered into under date of October 21, 1924, settling the respective property rights of said parties be and the same is hereby confirmed, ratified and approved, and the property rights of the said parties estab-

lished as in said agreement set forth." No appeal was taken from either decree. In June, 1930, more than four years after the entry of the final decree, plaintiff instituted contempt proceedings, pursuant to which a citation was issued directing the defendant to show cause on August 8, 1930, "why he should not be punished for contempt of court in disobeying the order and judgment of this court heretofore made and entered . . . requiring him to pay the sum of $75.00 per month on the 1st day of each and every month commencing January 1st, 1925, to the plaintiff in said action . . . " Some time afterward the contempt proceeding came on for hearing, but there being no mention whatever in the complaint or in either decree, or elsewhere in the judgment-roll, of the subject of alimony, it was necessary to take evidence as to the contents of the property settlement agreement referred to in said decrees, and thereupon said agreement was admitted in evidence, from which it appeared that besides transferring to plaintiff a number of shares of corporate stock and certain real property, defendant paid a list of outstanding bills and agreed to pay to plaintiff $60 a month until January, 1925, and thereafter $75 a month during her life, or as long as she remained unmarried. Other evidence, oral and documentary, was taken and thereafter, to wit, on January 14, 1931, the court made the order from which this appeal was taken. It was thereby "ordered, adjudged and decreed: 1st: That the court has jurisdiction to issue and enforce the said order to show cause and that the above entitled court, both in the said interlocutory decree of divorce and in the final decree of divorce heretofore ordered that the property rights of the parties hereto be established as provided in said agreement of October 21, 1924, and that thereby the court ordered the defendant to pay to the plaintiff the said sum of $75.00 per month on the first day of January, 1925, and on the first day of each and every month thereafter during the lifetime of plaintiff and while she shall remain unmarried, and that by reason of such order of the court said court now has jurisdiction to punish defendant for contempt of court on his failure to make the payments in accordance with said order; 2nd: That the evidence shows that defendant is able to pay the plaintiff toward her maintenance and support the sum

of $17.50 per month, and until the further order of this court defendant shall pay to plaintiff the sum of $17.50 per month, commencing January 19, 1931, and on failure of defendant to make said payment on January 19, 1931, and on the 19th day of each and every month thereafter defendant be adjudged guilty of contempt of this court and be punished therefor in accordance with the further order of this court; 3rd: That this court retain jurisdiction of this proceeding for the purpose hereafter, on motion of either party, to increase or decrease the amount of said monthly payment as the facts to be presented to the court may warrant; 4th: That the court withhold at this time any order punishing defendant for contempt of court for failing to make the payments required by said agreement and the order of this court during the period since the last payment made by defendant, but the court retains jurisdiction for the purpose of making such an order adjudging defendant in contempt of this court at such time hereafter as the financial ability of defendant to make all or any of such delinquent payments should be made to appear.''

As stated in Nelson on Divorce and Separation (vol. 2, p. 904) a decree for alimony is an order of the court to the husband compelling him to support his wife by paying certain sums, and thus perform a public as well as a marital duty. And continuing, the author goes on to say that such a decree is something more than an ordinary debt or judgment for money, that it is a personal order to the husband similar to any order to one of its officers; and that the purpose of imprisonment for contempt based thereon is not alone to enforce the payment of money, but to punish the party for disobedience of the order. In other words, as pointed out in Schouler on Marriage, Divorce, etc. (vol. 2, 6th ed., p. 1998), a judgment for alimony differs from an ordinary judgment at law in this, that the latter does not order the defendant to pay anything, it simply adjudicates the amount owing; while the former, though partaking of the nature of a judgment, goes further and is a direct command to the defendant to pay the sums therein mentioned. The case of *Andrews* v. *Superior Court,* 103 Cal. App. 360 [284 Pac. 494], restates the same doctrine. In the present case, as will be seen, the interlocutory and

final decrees do not mention the subject of alimony; they simply ratify, confirm and approve a property settlement agreement entered into on a certain date; therefore, in the form in which they were rendered, said decrees are not only legally insufficient to warrant the docketing of any money judgment against defendant, but they are wholly insufficient to support contempt proceedings because no duty whatever is imposed thereby upon the defendant. Evidently such was the view taken by the trial court; otherwise it would not have found it necessary to take additional evidence to judicially ascertain and determine the contents of the agreement referred to in said decrees, and its order threatening an adjudication of contempt would not have been based, as it was, on the subsequent order of January 14, 1930, but would have been founded on the decrees themselves.

In support of the order appealed from plaintiff relies mainly on the case of *Tripp* v. *Superior Court*, 61 Cal. App. 64 [214 Pac. 252, 253]. But in that case, unlike the present one, the agreement between the parties was set out in full in both decrees, and by express provision was made a part thereof. The duty imposed upon the defendant was, therefore, readily ascertainable from the decrees themselves. Furthermore, the agreement in that case provided that, if approved, the same should be embodied in the decree; and therefore in this connection the court said: "This stipulation surely contemplated that the terms of the agreement, when it should be embodied in the decree, should have the compelling power of the court behind its every covenant." Here there was no such stipulation. Plaintiff also cites *Ex parte Weiler*, 106 Cal. App. 485 [289 Pac. 645]. So far as the opinion therein discloses, the property settlement agreement was not set out in either of the decrees, but the case is essentially different from the present one in the following particulars: There the agreement itself expressly provided that it should be made part of the judgment of divorce, and in accordance therewith plaintiff in her complaint expressly requested the court to approve and confirm said agreement; and pursuant to such request it was expressly declared in both decrees that said agreement was made part thereof; all of which shows a clear intention on the part of the parties themselves as well as the court to place "the compelling power of the court behind its every

covenant" (*Tripp* v. *Superior Court, supra*) ; while in the present case the agreement contained no such provision, the complaint made no such request, and although the agreement was ratified and confirmed by the court, neither decree by express provision or otherwise made the agreement a part thereof.

It follows, therefore, that if the decrees themselves were legally insufficient to support contempt proceedings, the trial court was without jurisdiction, after a lapse of five years, to remedy the defects or to amplify or supplement the same by the order in question, because no reservation, express or implied, was made therein of the subject of alimony, and said decrees had long since become final. (*Howell* v. *Howell*, 104 Cal. 45 [37 Pac. 770, 43 Am. St. Rep. 70] ; *O'Brien* v. *O'Brien*, 130 Cal. 409 [62 Pac. 598] ; *McCaleb* v. *McCaleb*, 177 Cal. 147 [169 Pac. 1023] ; *London G. & A. Co.* v. *Industrial Acc. Com.*, 181 Cal. 460 [184 Pac. 864].)

The order appealed from is accordingly reversed, with directions to dismiss the contempt proceedings. ■ The annulment of said order does not, of course, affect plaintiff's right to enforce said agreement by civil action. (*Roberts* v. *Roberts*, 83 Cal. App. 345 [256 Pac. 826].)

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 20, 1933.