[Civ. No. 5111.   Third Appellate District.—January 17, 1935.]

FRANCES E. BAXTER, Respondent, v. DONALD E. BAXTER, Appellant.

John L. McGonigle for Appellant.

Pottle & Pottle and Benjamin M. Stansbury for Respondent.

DEIRUP, J., *pro tem.*—Plaintiff filed an action for divorce against defendant on November 25, 1925, on grounds of cruelty. She alleged in her complaint "that there is community property owned by the parties hereto" and minor children, and prayed for a divorce, "custody of said minor children, and for all other and proper relief in the premises". On the same day the defendant filed an appearance, but permitted his default to be entered.

The action came on for hearing on December 1, 1925, and on the fourteenth day of that month the court entered a memorandum decision:

"Interlocutory decree of divorce granted plaintiff. Property settlement approved; decree is made in accordance therewith. Minor children granted to the plaintiff until the further order of the court."

On December 30th the interlocutory decree was filed. The court found therein that the allegations of the complaint were true, and adjudged that the plaintiff was entitled to a divorce; and provided, further:

"The property settlement heretofore entered into between the parties hereto, and introduced as an exhibit in this case, is hereby approved and made a part of this order and decree."

The property settlement agreement referred to was dated November 25th—the day the complaint was filed—and was filed as an exhibit in the case on the day the interlocutory decree was signed. It recited that there were disagreements between the parties. In it defendant agreed to convey certain real property to Security Trust and Savings Bank for the benefit of plaintiff and to pay, "for and on account of taxes, insurance, repairs, maintenance and support of the party of the second part and the children of the parties hereto . . . the sum of $400 per month", with the proviso that if a divorce should be granted, and if the plaintiff should remarry, the monthly payments should be reduced to $100 for each of the three children under majority and unmarried. The parties also quitclaimed to each other certain properties, and each relinquished any and all claims of every kind against the other. Specifically, the plaintiff "releases and discharges any and all right of maintenance, support, alimony, attorneys' fees, counsel fees, court costs and all other property rights". There was no suggestion in the agreement that it was to be approved by the court.

On December 18, 1926, the parties made another contract which was designated as a "community property settlement agreement". It recited that an interlocutory decree of divorce had been entered; that a property settlement agreement had been "included in the above mentioned judgment of divorce", and approved by the judge, "and made a part of the interlocutory judgment"; that the terms of the agreement had not been complied with; and that "it is the wish and desire of the parties hereto, subject to the approval of a judge of the Superior Court of the County of Los Angeles, State of California, to set aside entirely the above mentioned property settlement agreement"; and that it was the wish and desire of the plaintiff "that this new agreement be substituted for the agreement dated November 25, 1925, and entered in its place and stead at the time a final decree of divorce is granted to her". The new agreement provided for the transfer of certain real property to the plaintiff herself instead of to the bank, subject to an encumbrance which she agreed to pay. Defendant agreed to pay $400 a month for the purpose of supporting the plaintiff and the

children, and for the purpose of paying the "encumbrances, taxes, etc.", on the property; and "Further agrees that, if it is necessary to furnish an amount over and above said sum of $400 a month for the necessary support of the party of the second part and the said children, he will, upon a reasonable request, do so''; and also that he would carry a policy of life insurance for the benefit of plaintiff. The agreement contained the same mutual releases as were set forth in the first agreement.

On January 7, 1927, the court made an *ex parte* order to the effect that the second agreement "is hereby approved and introduced as an exhibit for the purpose of substituting and taking the place of said agreement dated November 25, 1925, and is hereby made a part of the interlocutory judgment of divorce". A final decree of divorce was signed on the same day, in which it was "further ordered and decreed that wherein said interlocutory decree makes any provision for alimony or the custody or support of children, said provision be, and the same is, hereby made binding on the parties affected thereby the same as if herein set forth in full, and that wherein said interlocutory decree relates to the property of the parties hereto, said property be, and the same is hereby, assigned in accordance with the terms thereof to the parties therein declared to be entitled thereto".

On February 6, 1931, more than four years after the filing of the final decree of divorce, the court made an *ex parte* order by which it required the defendant, in accordance with the provisions of said second agreement, to "pay to the plaintiff . . . on the first day of each calendar month, after the execution of said agreement, to-wit, after December 18, 1926, the sum of $400. until such time as plaintiff shall remarry", and thereafter $100 a month for each minor child. It was further ordered that "this amendment to the interlocutory judgment shall be filed and entered *nunc pro tunc* as of the date of the order previously amending said interlocutory judgment, which was made and entered on . . . January 7, 1927". The order contained no finding or statement that it was made for the purpose of correcting

the records or that any previous order failed for any reason to state truthfully the actual judgment of the court.

On March 12, 1931, plaintiff applied to the court for a writ of execution to collect payments that had accrued after July 1, 1930, at the rate of $400 a month. The writ was issued, but was returned unsatisfied. On October 23d plaintiff filed an application for the appointment of a receiver to take charge of defendant's property in aid of execution, and on October 31st defendant filed a notice of motion to vacate and declare void the amendatory order of January 7, 1931. The court granted the motion for the appointment of a receiver and denied the motion to expunge from the records the order amending the interlocutory decree. Defendant has appealed from the order granting plaintiff's motion and from the order denying defendant's motion.

Plaintiff contends that all of the orders that were made by the court are valid, and that by virtue of those orders she is entitled to the process of the court, in the divorce action, for the collection of the monthly payments. Defendant takes the position that all of the orders in reference to property rights, other than those contained in the memorandum of decision or the interlocutory decree, were invalid; that the orders that were first entered were not orders for the payment of money and cannot be enforced as such; and that therefore any rights that plaintiff may have under the property settlement agreements must be enforced under a separate civil action.

A husband and wife, after separation, may (as was done in this case) make a valid contract for the division of their property. (*Cookinham* v. *Cookinham*, 219 Cal. 723 [28 Pac. (2d) 1045].) Such contracts, however, are always subject to question because of the confidential relations that subsist between married persons, and, when followed by a suit for divorce, should be submitted to the court. When so submitted and approved by the court, with knowledge of the facts, they become binding agreements. (*Moog* v. *Moog*, 203 Cal. 406 [264 Pac. 490]; *Loveren* v. *Loveren*, 106 Cal. 509 [39 Pac. 801]; *Locke Paddon* v. *Locke Paddon*, 194 Cal. 73 [227 Pac. 715].)

■ The court has statutory power to award alimony to an innocent wife, regardless of a property settlement, and whenever alimony is awarded by virtue of the statute, the court retains the power to change the amount, upon a showing being made that there has been a change in conditions. (*Soule* v. *Soule*, 4 Cal. App. 97, 87 Pac. 205].)

But if an order for monthly payments is based upon a property settlement the amount cannot be subsequently increased or reduced. (*Johnson* v. *Johnson,* 104 Cal. App. 283 [285 Pac. 902]; *Hogarty* v. *Hogarty,* 188 Cal. 625 [206 Pac. 79]; *Wallace* v. *Wallace,* 136 Cal. App. 488 [29 Pac. (2d) 314].)

■ The court may reserve jurisdiction to settle property rights (*Ex parte Ambrose,* 72 Cal. 398 [14 Pac. 33]; *Hogarty* v. *Hogarty, supra*), but if it disposes of them in the interlocutory decree, it loses jurisdiction to change them later. (*De Haven* v. *Superior Court,* 114 Cal. App. 253 [300 Pac. 95].)

■ Where a property settlement agreement contains a provision that it shall not go into effect until it is approved by the court, and is therefore rather in the nature of a stipulation of the parties than a final agreement, and the complaint in a divorce action contains the proper allegations and prayer looking toward the settlement of the property rights of the parties, an order of the court that the terms of the contract be carried out will be implied from the incorporation of the agreement in the decree, either bodily or by reference. (*Tripp* v. *Superior Court,* 61 Cal. App. 64 [214 Pac. 252]; *Ex parte Weiler,* 106 Cal. App. 485 [289 Pac. 645].) But if the agreement is complete in itself, without reference to action by the court, and the plaintiff does not ask for a property settlement, the court does not, by merely approving the settlement or even by incorporating it in the decree, order the performance of the contract. (*Andrews* v. *Superior Court,* 103 Cal. App. 360 [284 Pac. 494]; *Schnerr* v. *Schnerr,* 128 Cal. App. 363 [17 Pac. (2d) 749]; *De Haven* v. *Superior Court, supra.)*

The case of *Tripp* v. *Superior Court, supra,* has to do with a property settlement that was by its terms held in abeyance until approved by the court, and embodied in the

divorce decree. It was held that a provision for the payment of money to the wife could be enforced by contempt proceedings, the reason given being in part as follows:

"It is contended that the decrees in the divorce action did not order petitioner to pay the $900 mentioned in the property agreement. It is true that neither of the decrees contained such an order in express terms, but we are nevertheless of the opinion that petitioner's contention cannot be upheld. The agreement recited the fact that a divorce action was pending between the parties and contained a formal stipulation that it would be subject to the approval of the court, and that, when so approved, it should be embodied in the decree in the divorce action. This stipulation surely contemplated that the terms of the agreement, when it should be embodied in the decree, should have the compelling power of the court behind its every covenant."

The case of *Ex parte Weiler, supra,* also involved the question whether the terms of a property settlement that had been approved by the court could be enforced by contempt proceedings. There, the parties had entered into an agreement which contained a covenant that "the provisions of this agreement shall be referred to in any judgment of divorce between the parties hereto and made a part thereof". The wife, applying for a divorce, alleged the execution of the instrument, and requested the court to approve and confirm it. The interlocutory decree contained the following clause: "It is further ordered, adjudged and decreed that this court does hereby approve and confirm and make a part of this decree the provisions of that certain property settlement agreement made and entered into between the parties hereto and executed by them on the 15th day of May, 1928." It was held that the agreement could be enforced in the divorce action. The court follows the decision in *Tripp* v. *Superior Court, supra,* and says: "The case entitled *Andrews* v. *Superior Court,* 103 Cal. App. 360 [284 Pac. 494], was based on a different set of facts and is not controlling in the instant case."

In *Andrews* v. *Superior Court, supra,* the holding was that a covenant in a property settlement to make monthly payments could not be enforced by contempt proceedings,

notwithstanding the following provision in the interlocutory decree of divorce: "It is further adjudged that that certain property settlement heretofore entered into between plaintiff and defendant, and providing for payments to the plaintiff in the sum of two hundred ($200.00) dollars per month, and on file in this case, be, and the same is hereby made a part and portion of this interlocutory judgment." The complaint contained no allegation concerning property, earning ability or other facts as a basis for an award of alimony, other than the allegation "that there is no community property", and the prayer was for a divorce, for custody of a minor child, and for general relief. It is stated in the opinion that the quoted portion of the decree merely identifies the property settlement and in nowise states "any order for the payment of any sum. The interlocutory judgment contains no order, decree or judgment for the payment of any sum. This determination makes it unnecessary to discuss at length the contention and citations by petitioner that the judgment is void in so far as it attempts to require the payment of alimony, for the alleged reason that the matter of alimony is without the issues of the case and beyond the prayer of plaintiff's complaint."

It appears from the opinion in the case of *Schnerr* v. *Schnerr, supra* (in which case a hearing was denied by the Supreme Court), that the complaint alleged that the property rights of the plaintiff and defendant had been settled, and that no relief was sought, other than a divorce and general relief. The court decreed: "that the agreement between the parties hereto made and entered into under date of October 21, 1924, settling the respective property rights of said parties, be, and the same is hereby confirmed, ratified and approved, and the property rights of the said parties established as in said agreement set forth". Holding that contempt proceedings were void, the court said: "In other words, as pointed out in Schouler on Marriage, Divorce, etc. (vol. 2, 6th ed., p. 1998), a judgment for alimony differs from an ordinary judgment at law in this, that the latter does not order the defendant to do anything; it simply adjudicates the amount owing; while the former, while partaking of the nature of a judgment, goes further and is a

direct command to the defendant, to pay the sums therein mentioned. The case of *Andrews* v. *Superior Court, supra,* restates the same doctrine. In the present case, as will be seen, the interlocutory and final decrees do not mention the subject of alimony; they simply ratify, confirm and approve a property settlement agreement entered into on a certain date; therefore, in the form in which they were rendered, said decrees are not only legally insufficient to warrant the docketing of any money judgment against defendant, but they are wholly insufficient to support contempt proceedings because no duty whatever is imposed thereby upon the defendant.''

It is obvious that the situation involved in the appeals now before this court is identical with that involved in *Andrews* v. *Andrews, supra,* and *Schnerr* v. *Schnerr, supra.* As in each of those cases, the property settlement was complete in itself, and did not stipulate for approval by the court, and the plaintiff did not raise any issue involving property. Neither the parties nor the court contemplated any action on the part of the court other than the validation of the contract. Under such conditions an order to pay alimony cannot be inferred from the terms of either of the orders that were entered at the time when the divorce was granted. It is true that in *Schnerr* v. *Schnerr, supra,* the court did not purport to make the agreement a part of the decree by reference, as it did in the action now pending. But it did state that the agreement was binding upon the parties; and, as was said in *Andrews* v. *Andrews, supra,* the incorporation of the agreement was merely by way of identification of the instrument. It follows that the process of the court is not available to plaintiff to enforce the terms of the interlocutory decree.

As hereinabove stated, a new contract between the parties was executed on December 18, 1926, and in it the parties requested the court to approve that contract as a substitute for the one that was originally executed. The court thereupon made an order which purported to amend the interlocutory decree by substituting the provisions of the later contract, and entered a final decree of divorce in which it incorporated the second agreement by reference and declared its provisions to be binding. The court did not, however, order the payment of any sums of money, and in

view of the pleadings and all the circumstances of the case the amended interlocutory decree, if valid, could not be enforced by the process of the court.

Furthermore, at the time when the second agreement was filed the court had lost jurisdiction to change its original order in relation to property, and such jurisdiction could not be conferred upon it even by the consent of the parties. (*Bacigalupi* v. *Bacigalupi*, 72 Cal. App. 654 [238 Pac. 93]; *Gillespie* v. *Andrews*, 78 Cal. App. 595 [248 Pac. 715].)

The order made on February 6, 1931, which purported to amend the interlocutory decree by requiring the defendant to pay to the plaintiff $400 a month was void as a correction of the decree. Neither the original memorandum of decision nor the interlocutory decree contained an order for the payment of alimony. The omission of such an order could not have been an error of misprision of the clerk in entering the decree of the court. If "error was committed in rendering the judgment, it was a judicial error which could be remedied only by appeal or motion for new trial". (*O'Brien* v. *O'Brien*, 124 Cal. 422 [57 Pac. 225]; *McConville* v. *Superior Court*, 78 Cal. App. 203 [248 Pac. 553]; *Egan* v. *Egan*, 90 Cal. 15 [27 Pac. 22]; *Gury* v. *Gury*, 114 Cal. App. 460 [300 Pac. 81].)

It is ordered that the order denying defendant's motion to expunge from the record the amendment to the interlocutory decree and to quash execution, and the order appointing a receiver be, and they are hereby reversed.

Thompson, J., and Pullen, P. J., concurred.